PETER GERBERT, EXECUTOR OF JOHN SNYDER, DE- CEASED, PLAINTIFF IN ERROR, v. THE TRUSTEES OF THE CONGREGATION OF THE SONS OF ABRAHAM, DEFENDANTS IN ERROR.

1. In an action on contract for breach of covenant to convey real estate, with warranty of title, where the vendor's title is defective, nominal damages only can be recovered. *Drake* v. *Baker,* 5 *Vroom* 358, over- ruled.

2. Where there is a contract to convey unimproved land, with warranty of title, and the vendee, before conveyance is to be made, erects build- ings upon the land without the request of the vendor, in an action on contract to recover damages for failure to convey, the vendor's title proving defective, the value of the buildings cannot be recovered by the vendee.

On error to the Essex Circuit.

For the plaintiff in error, *Edward M. Colie.*

The question before this court, on this writ of error, is the measure of damages, under the circumstances of the case, on breach of a covenant to convey land.

The premises are in the city of Newark, New Jersey, known as No. 226 Washington street. On March 1st, 1884, the plaintiff's testator entered into a lease with the defendant in

error for the said premises for a period of five years from April 1st, 1884. That lease contained a stipulation for a further term of five years, provided notice should be given three months before the expiration of the said term. On October 12th, 1888, notice was given by the lessee (the defendant in error) that a further term was desired. No new lease was actually executed, but the defendant in error continued in possession of the property after the expiration of the first term of five years. The plaintiff's testator died in April, 1892, during the second period of five years.

The lease of March 1st, 1884, contained, among other things, the following: "And further, that if the said party of the second part shall desire to purchase the demised premises, that he [the lessor] will at any time during the tenancy hereby created or agreed upon, for the consideration of seven thousand dollars, sell and convey by warranty deed, with the usual full covenants, free and clear of all encumbrances, the demised premises to the said party of the second part, or such person or persons as they shall desire, upon their giving to him, his heirs, executors or administrators, notice that they desire such conveyance; such conveyance to be made within thirty days after the giving of such notice, and the payment of rent to cease at the delivery of such deed, and if not delivered within the said thirty days, then said rent to cease at the end of that time."

After the death of the plaintiff's testator, to wit, on June 1st, 1892, a demand was made upon the plaintiff in error for a conveyance pursuant to the aforesaid provision. It is for the breach of the covenant to convey pursuant to such notice that this suit is brought. The measure of damages for such breach, under the facts in this case, is the sole question before the court.

At the time of the making of the lease, March 1st, 1884, the leased premises had upon it the foundation of an old carpenter shop, the carpenter shop having been destroyed by fire before the lease was made. Immediately after entering into possession under the lease, the defendant in error, using the

old foundation, built a church or synagogue upon it, and expended therein, as appears by the evidence in the case, $2,632.99. This money was expended immediately after the first lease was signed, before the demand for renewal and years before the demand for a conveyance pursuant to the covenant. There is no controversy whatsoever in regard to these facts. The plaintiff in error was unable to make this conveyance because the testator had only a life estate in the property covered by the lease—an estate by curtesy—the title to the property being in his wife, deceased at the time of making the lease.

The sole question before the court is what damages the defendant in error was entitled to recover against the plaintiff in error, under these circumstances, for a breach of the covenant to convey contained in the lease of March 1st, 1884.

The measure of damages for the breach of such covenant under such circumstances is an open question before this court. There is no decision binding this tribunal in this state.

The construction of this lease was before this court and decided by it at November Term, 1894. *Trustees* v. *Gerbert,* 28 *Vroom* 395. The opinion in that case declares that " the only question submitted to this court is whether the plaintiff was entitled to recover damages in the court below for breach of the agreement to convey."

That question came before this court on a writ of error, because in the first trial below the trial court held that the covenant to convey was limited to the term of five years expressly created by the lease of March 1st, 1884, and did not extend to cover the renewal thereof. This court held that the covenant to convey did cover the renewal period of five years, and the case went back to determine the damages of the plaintiff for the breach of the covenant to convey.

I. The plaintiff below was not entitled to recover more than nominal damages for the breach of the covenant to convey.

Under the settled law of this state, if Snyder had made a conveyance in his lifetime to the defendant in error contain-

ing a covenant of warranty, and there had been an ouster by the remaindermen, and the defendant in error had brought an action for damages growing out of the breach of the covenant of warranty, it would have been entitled to recover, as damages, only the consideration money named in their deed—$7,000, the consideration named in the agreement to convey—together with interest thereon not exceeding six years antecedent to the eviction, together with costs ; and in the event that the purchase-money was wholly unpaid, they would then have recovered only nominal damages. Such is the settled law of this state. *Stewart* v. *Drake,* 4 *Halst.* 139; *Holmes* v. *Sinnickson,* 3 *Gr.* 313; *Morris* v. *Rowan,* 2 *Harr.* 324.

Such being the settled rule as to the damages recoverable on a breach of a covenant of warranty upon an ouster, the question presents itself why the measure of damages should be changed and be greater where a conveyance has not been actually made, and there is only a contract to convey.

As already said, there is no decision of this state binding on this tribunal. There is great confusion on the subject in the decisions of the various states.

On principle, there ought to be in our own state a uniformity of doctrine as to the subject of damages where the injury is the same. There can be no distinction in principle between the damages recoverable by a plaintiff upon a contract to convey, and the damages recoverable upon a covenant of warranty upon failure of title and ouster. The injury sustained by the plaintiff is in both cases the same—the loss of the property. The measure of damages is absolutely settled in the case of the loss of the property under a covenant of warranty. Chief Justice Beasley, in the case of Drake *v.* Baker, cited and discussed hereafter, said : " But whatever the history or reason of the rule may be, it is certain that, as a part of the law, it is entirely established."

Is the rule different upon a breach of a covenant to convey ? There is no decision binding upon this tribunal so holding.

The Supreme Court, in *Drake* v. *Baker,* 5 *Vroom* 358, decided in 1871, held that there was a different rule applicable

to a breach of a covenant to convey. That court held that "if the vendor is aware, at the time of entering into the contract, that his ability to comply depends upon a contingency, upon a breach, under these conditions, the vendee will be entitled to substantial damages to the extent of a full indemnity."

The court, in that case, relied upon the authority of the English cases, and particularly upon the distinction that the English courts had made in relation to *Flureau* v. *Thornhill,* 2 *Bl. R.* 1078, the leading case on the subject. A number of English cases—*Pounsett* v. *Fuller,* 17 *C. B.* 660; *Robinson* v. *Harnan,* 1 *Exch.* 849; *Engel* v. *Fitch, L. R.,* 3 *Q. B.* 315; *Hopkins* v. *Grazebrook,* 6 *Barn. & C.* 31—had all distinguished Flureau *v.* Thornhill, and limited its doctrine.

Flureau *v.* Thornhill held that only nominal damages could be recovered on a breach of a contract to convey real estate. The English decisions above cited and relied upon for the doctrine of Drake *v.* Baker, at the time of that decision in our Supreme Court, expressed the law of England, and distinguished a case such as arose in Drake *v.* Baker from the doctrine of Flureau *v.* Thornhill.

But since the decision of Drake *v.* Baker, the English cases relied on for that decision have been overruled and been declared not to express the law on the subject. The whole matter has been thoroughly discussed in the House of Lords in the case of *Bain* v. *Fothergill,* 7 *H. L. Cas.* 158. The opinions in the House of Lords were rendered by Lords Chelmsford and Hatherly, and is announced by the former as follows (*Id.* 201): "Now, the rule established by Flureau *v.* Thornhill is that upon a contract for the purchase of real estate, if the vendor, without fraud, is incapable of making a good title, the intended purchaser is not entitled to any compensation for the loss of his bargain."

Further, he says (*Id.* 207): "Upon a review of all decisions on the subject, I think that the case of Hopkins *v.* Grazebrook ought not any longer to be regarded as an authority. If a person enters into a contract for the sale of a real estate,

knowing that he has no title to it, nor any means of acquiring. it, the purchaser cannot recover damages beyond the expenses he has incurred by an action for the breach of the contract; he can only obtain other damages by an action for deceit."

Lord Hatherly (*Id.* 209, 210) expresses the same views.

The doctrine, as now established in England, is thus stated by Sedgwick, referring to Bain *v.* Fothergill: "This case carries out the doctrine of Flureau *v.* Thornhill to its fullest extent, and it establishes as law that wherever the vendor, at the time of performance, has no title to the land, and on that ground refuses to perform, he will not be liable for the loss of his bargain. It sustains the principle that fraud can never change the rule of damages in actions on contract."

Bain *v.* Fothergill has been followed and applied by the English courts in the case of *Rowe* v. *School Board*, 36 *Ch. Div.* 619.

Few questions, even in a court of last resort, are so fully considered as was the question under consideration in Bain *v.* Fothergill. That decision must command the attention and respect of every tribunal sitting as a court of last resort.

The decision made the English law harmonious and rational, recognizing that as there was no distinction between the in-. jury to the plaintiff on a breach of a covenant to convey, as distinguished from his injury after an ouster, under a covenant of warranty, so there can be no distinction as to the measure of damages. It also furnished a complete remedy where there was deceit by relegating the plaintiff to an action for deceit for the damages arising by reason of the deceit.

In this state the measure of damages on a breach of covenant of warranty, after ouster, is firmly settled and cannot be disturbed. The law is made irrational by the doctrine of Drake *v.* Baker, which was decided upon the authority of the English cases, while the English law was in a state of confusion. The authorities upon which that case was decided in the Supreme Court having been overruled, and upon a most complete and careful consideration, the doctrine having been settled otherwise by the courts of England, it is respectfully

submitted that Drake *v.* Baker ought not to be followed, but the case overruling the authorities on which it is decided should be followed, and that the law of this state should accord with the law as laid down by the House of Lords, and our law, like the English law, be made harmonious and rational, and that where deceit exists the plaintiff should be left to recover damages for the loss of his bargain in an action for deceit.

It is insisted, therefore, that the law as laid down in Bain *v.* Fothergill should be laid down by this court in this case, and that as a result the trial court erred in awarding the defendant in error damages for loss of its bargain. Whatever was said on that subject in this court in the report of this same case (27 *Vroom* 396) was *obiter*. As stated in the opinion of the court, cited above, the only question before the court was whether there did exist an enforceable covenant to convey in favor of the plaintiff. That was the only question before the court, and that was the only question it was called on to decide.

II. If the defendant in error was entitled to recover substantial damages for the loss of its bargain, the trial court erred in including therein the sum of $2,632.99, the cost of the improvements put by the lessee upon the property.

It is essential to recall the facts involved in this case in determining this question. The first period covered by the lease of March 1st, 1884, expired April 1st, 1889. The lease contained the provision above recited in division I. in relation to a conveyance. The provision contained the following language : " Such conveyance to be made within thirty days after the giving of such notice, and the payment of rent to cease at the delivery of such deed, and if not delivered within said thirty days then such rent to cease at the end of that time."

The lease is absolutely silent on the subject of " improvements." It is a lease of land. It appears by the case that at the time of the making of the lease the land was practically unimproved. It had upon it only the remains of a cellar of an old carpenter shop, which shop had been destroyed by fire.

On November 15th, 1888, by a notice dated October 12th, 1888, a renewal of the lease was demanded for a period of five years. That term would expire April 1st, 1894. The testator of the plaintiff in error died in April, 1892. After the death of the plaintiff's testator, to wit, on June 1st, 1892, the first demand was made for a conveyance.

By testimony it appears that immediately after entering into possession under the first lease in 1884, the "improvements" now sought to be included in the damages for the breach of the covenant to convey were made, and all the money now sought to be recovered was expended in the "improvements;" the "improvements" consist in the building, at that time, of a church or synagogue on the old foundation on the property.

*First.* The cost of the "improvements" was erroneously included in the judgment because they were made while the relation of landlord and tenant existed between the testator of the plaintiff in error and the defendant in error.

The cost of such "improvements," if made while the relation of landlord and tenant existed, could not be in any event included in the damages for the breach of the covenant to convey. If any right of recovery existed at all by reason of the "improvements," it must be upon some covenant determining the rights of the defendant in error as a tenant.

(1). It seems very clear that improvements of the character in question were not removable, as between landlord and tenant; but, assuming that they were removable, then, under the facts in this case, no damages can be claimed based upon their value. The tenant has a right to remove removable fixtures or "improvements" during his possession of the property. If the defendant in error had a right to remove these "improvements," then it should have been exercised before there was any interference with their possession by the tenants in remainder. But, instead of removing such "improvements," if it had the right, it elected to take a new lease from the remaindermen, both of which stipulate "that all improvements of any kind made on or about said premises

shall be and become the property of the party of the first part at the expiration of this lease or any renewal thereof."

The defendant in error has elected, if it had a right to remove the "improvements," not to exercise that right, or to surrender it, and enter into an express covenant to leave upon the property, for the remaindermen, all the "improvements" made on or about the premises.

(2) If the "improvements" in question were not removable fixtures, as between landlord and tenant, then it is settled law that the tenant could have no claim against the landlord for payment therefor. It is needless to multiply citations for this doctrine, and it is sufficient to cite the well-known leading case, *Kutter* v. *Smith,* 2 *Wall.* 491, which thus states the law clearly:

"The law imposes no obligation on a landlord to pay the tenant for buildings erected on demised premises. The innovation on the common law rule that the building becomes a part of the freehold, has extended no further than the right of removal while the tenant is in possession."

This rule is emphasized by the doctrine that "if a tenant, at the close of his term, renews his lease, or surrenders it, for the purpose of acquiring a fresh interest in the premises, he should take care to reserve his right to remove such fixtures as he had a right to sever under the old tenancy. For where his continuance in possession is under a new lease or agreement, his right to remove fixtures is determined, and he is in the same situation as if the landlord, being seized of the land together with the fixtures, had demised both to him." *Tayl. Land. & T.,* § 552; *Lee* v. *Risdon,* 7 *Taunt.* 188; *Thresher* v. *East London,* 2 *Barn. & C.* 608; *Longham* v. *Ross,* 45 *N. Y.* 792; *Shepard* v. *Spaulding,* 4 *Metc.* 416.

The defendant in error enjoyed the full term originally created by the lease. The defendant cannot have any higher or greater claim than he would have had if the testator of the plaintiff in error had actually made a new demise. If he had made such a new demise under the above rule, the defendant in error would have lost its right to remove the im-

provements, if it had any, and thereby its right to any damages it might be entitled to based upon an interest in the same.

But if it is possible to make it more conclusive that the defendant in error has no claim for damages by reason of the " improvements," it was stipulated in the original lease that the new demise should be " upon the same terms as to the amount and payment of rent." By this stipulation, it was cut off from claiming the right under the new demise to reserve to itself the right to remove the " improvements."

Had a lease been tendered to it for the further period of five years, upon the same terms as to rent and time of payment, and not reserving the right to remove the so-called " improvements," the lessee would have been bound to accept it and abide by it. As a consequence, it cannot now have any claim for damages by reason of any supposed interest in the " improvements," as connected with any breach of any covenants in relation to such new lease or renewal.

In *Lannigan* v. *Kille*, 97 *Pa. St.* 120, a very fully considered case, and one in which the court resisted the temptation to permit " a hard case to make bad law," the law on the subject of right to compensation for buildings or other improvements upon a leasehold, upon an eviction, was very fully considered, and the law was declared to be " that a tenant who, upon his own motion and for his own purposes, erects a building or other improvements upon a leasehold, certainly cannot recover the value thereof from the lessor in the event of an eviction. In such case the rule of *caveat emptor* would apply. It was his own folly to build upon another's land."

The Court of Errors will certainly hesitate to establish a doctrine which will make a landlord responsible for " improvements " made by a tenant upon leased land. Such a doctrine would lead to great hardship, and would subject the landlord to be constantly determining whether or not he cared to purchase, in case the lessee should be ousted, improvements such as the tenant, to suit his own convenience, saw fit to erect

upon the leased property. In this case the court would force the plaintiff in error to purchase a synagogue or church.

It is submitted that neither on principle nor authority is there any basis for such a doctrine.

*Second.* If the defendant in error claims that he has a higher right than that of a mere tenant, because of the option to purchase contained in the lease to the defendant in error, which makes the plaintiff in error liable to pay for the so-called "improvements," it is to be said in reply that the so-called "improvements" were made before notice was given to the landlord that it elected to purchase, and while the relation of landlord and tenant alone existed between them. It would be grossly inequitable and unfair to charge the lessor with liability for these "improvements," made while the relation of landlord and tenant alone existed, and when he might permit the lessee to make such erections as it saw fit on the demised property for its convenience. An equity might possibly arise against the lessee if the improvements were made after notice of their election to purchase had been given; but that is not this case; no notice of election to purchase was given until after the lessor's death.

But it is settled law that the fact that a tenant has an option to purchase given him in his lease does not change the rule above stated nor fix a liability on the lessor to pay for "improvements" made for the convenience of the tenant during his term.

Even where the improvements were made by a vendee in possession and the vendor is unable to make title, it has been decided that neither with nor without a covenant on the subject can the vendee recover for improvements made. *Dorsey* v. *Jackman,* 1 *Serg. & R.* 42; *Stark* v. *Ten Eyck,* 3 *Cai.* 111; *Pitcher* v. *Livingston,* 4 *Johns.* 1; *Bender* v. *Fromberger,* 4 *Dall.* 436; *Hayden* v. *Mentzer,* 10 *Serg. & R.* 329; *Bolton* v. *Johns,* 5 *Barr* 145.

It is said in *Smith* v. *Administrators of Smith,* 4 *Dutcher* 217: "That where the vendee, in possession under a parol agreement for the purchase of lands, makes improvements

upon the premises, he cannot recover the value of such improvements in an action at law upon the refusal of the vendor to fulfill the contract." Citing *Gillet* v. *Maynard*, 5 *Johns. Ch.* 85; *Shreve* v. *Grimes*, 4 *Litt.* 224.

Chief Justice Green continuing, said: "The improvements in such case are not made at the instance or request of the vendor, nor for his benefit, but for the benefit of the party making them. The law, therefore, will imply no promise by the vendor to pay for them."

In *Freeman* v. *Headley*, 4 *Vroom* 538, commenting upon the case last referred to, the court said: "The doctrine recognized in that case, that where the vendee in possession, of his own motion and not at the instance of the vendor, makes improvements, he shall not recover if the contract of sale falls through, is without doubt correct; but it is placed on the ground that they were made by the plaintiff for his own benefit."

In both Smith *v.* Administrators of Smith and Freeman *v.* Headley the court found that the "improvements" were not made by the party in possession for his own benefit, but that they were made at the request of and under a promise to pay on the part of the owner of the land. In other words, that in those cases there was a promise to pay for the improvements, and they were made in reliance upon that promise.

Of course, there is the clearest distinction between the cases where the "improvements" are made under an assurance that title will be given—in other words, where the vendee has nothing to do but accept the conveyance—and the case now under consideration, and where the proposed vendee was to elect and give notice in writing of such election before he was entitled to be considered a vendee in possession. If the doctrine above declared has been applied to the cases where the vendee was in possession under an agreement to convey, how much greater ground must there be for its application to a case such as the present one, where there was to be an election evinced in writing on the part of the party in possession before it could be considered a vendee in possession,

and where all the "improvements" sought to be recovered for were made before that time.

The law may be so considered settled in this state.

The same doctrine is settled in the English courts, in *Worthington* v. *Warrington*, 8 *Man., G. & S.* 133, where the party entered into possession of premises under an agreement that he was to hold them as tenant for two years, with liberty to make, at his own expense, such alterations and additions to the premises as he might think proper, the same being "improvements," he to have the option of purchasing the premises at any time during the two years for £200. It was discovered that the owner had not the interest in the property described in his agreement with the party in possession, and the party in possession brought an action to recover for breach of the contract and also compensation for the money expended by him in "improvements." It was held that he was not entitled to recover the value of the improvements. Mr. Justice Coltman, delivering the opinion, said : "If the purchaser thinks proper to enter into possession and to incur expenses in alterations before the title is ascertained, he does so at his own risk. I see nothing in this case to distinguish it from the ordinary one. The plaintiff should have taken care to ascertain that the title was good before he proceeded to lay out money upon the premises."

This case has been cited and approved in *Engel* v. *Fitch*, *L. R.*, 3 *Q. B.* 328 (1868) ; *Bain* v. *Fothergill*, *L. R.*, 7 *H. L. Cas.* 188 (1874) ; *Schreiber* v. *Binkel*, 54 *L. T.* 911 (1886).

It would seem that there can be no distinction drawn between the case of Worthington v. Warrington and the case at bar. The provision in the lease in that case permitting alterations and additions to the premises was clearly inserted to save the tenant from liability for waste, and while operating to save him from such liability would confer upon him no right against the landlord for payment for the money expended thereon.

The present case is of great importance on this question of the measure of damages, for if such an element as " improve-

ments," made by the tenant for his own benefit, or by a vendee in possession, can be charged against the landlord or vendor, a liability of enormous amount might be fixed upon him by the character of such improvements made by a tenant or vendee for his sole benefit, and the landlord or vendor would be under the necessity of constant watchfulness to see that no "improvements" were made by the tenant lest he should subject himself to an overwhelming liability for "improvements" that he himself did not want and would never have made.

The rule on this subject is stated by Mr. Rawle in this language:

"In all these cases he made the improvements at his own risk, and in none of them would the hardship to the purchaser be so great as might be that to the seller of being ruined by his purchaser's improvements."

The importance of the principle now before this court for decision cannot be exaggerated, when upon a lot of comparatively small value an improvement worth thousands and sometimes hundreds of thousands of dollars may be placed; sometimes by the tenant for his own accommodation under a lease for a term of years; sometimes under a lease with an option to buy, as in this case, and sometimes by a purchaser who relies upon his covenant of warranty. The liability of the lessor or vendor in each situation should be clearly determined, and he should not be subjected to the danger of being ruined by the erection of an "improvement" that he neither consented to, requested or would himself have built.

It is respectfully submitted that both on principle and authority, under the circumstances of this case, it was erroneous to subject the plaintiff in error to liability for the value of the "improvement," to wit, the church or synagogue built by the defendant in error for its own accommodation upon the land leased, which "improvement" was, under the facts admitted in the case, made while the relation of landlord and tenant alone existed.

For the defendant in error, *James E. Howell.*

The action below was on a covenant to convey lands. The cause was in this court at November Term, 1894, at which time this court construed the covenant sued on. *Trustees* v. *Gerbert*, 28 *Vroom* 395.

The facts are as follows: John Snyder in his lifetime, on March 1st, 1894, made a lease under seal of the premises, No. 226 Washington street, Newark, for the term of five years from April 1st, 1894. The lease contained the following covenants:

"And the said John Snyder further covenants and agrees to and with the said party of the second part that he will let and demise to them the premises hereby demised, for a further term of five years from the expiration of the term hereby created and upon the same terms as to amount and payment of rent, if the said party of the second part shall so desire, and shall give notice thereof at least three months before the expiration of this lease; and further, that if the said party of the second part shall desire to purchase the demised premises, that he will at any time during the tenancy hereby created or agreed upon, for the consideration of $7,000, sell and convey by warranty deed, with the usual full covenants, free and clear of all encumbrances, the demised premises to the said party of the second part, or such person or persons as they shall desire, upon giving to him, his heirs, executors or administrators, notice that they desire such conveyance, such conveyance to be made within thirty days after the giving of such notice; and the payment of rent to cease at the delivery of such deed, and if not delivered within the said thirty days, then said rent to cease at the end of that term."

On November 5th, 1888, the trustees served a notice on Snyder that the church corporation desired a further lease for five years from the expiration of the then current term. The church corporation continued in possession, but Snyder made no new lease as by his covenant he was bound to do. Snyder had only a life estate in the demised premises. He died in April, 1892, and his estate in the land was thereby

terminated. The trustees still continued in possession, and on June 1st, 1892, served upon the executor of Snyder and upon his heirs-at-law, a notice that they elected to purchase the premises in question and demanded a deed in accordance with the lease, which the defendant, Gerbert, refused to give.

The question submitted to the court at the former argument was whether the church corporation was entitled to recover damages for breach of the agreement to convey.

Mr. Justice Van Syckel decided this question in favor of the trustees, and held that they were entitled to damages " arising from the loss of their bargain."

The judgment was reversed and came back to the Essex Circuit for a new trial. It was tried before the court without a jury, and the trial judge awarded damages in accordance with what he deemed to be the opinion of the Court of Errors.

The character of the damages is twofold—*first,* the damages arising out of the increased value of the land; *second,* the damages arising from the loss of the building, which the church corporation had erected upon the said property in anticipation of purchasing it.

I. As to the damages accruing from an increase in the value of the land.

Snyder agreed to sell the land for $7,000. At the time the covenant was broken, the court below found that the land was worth $375 a foot, making $9,750. Deducting the price agreed to be paid, the court found that the damages on this branch of the case amounted to $2,750. This seems to be entirely within the opinion of the court on the former argument. *Drake* v. *Baker,* 5 *Vroom* 358.

II. As to the damages arising from the loss of the building.

The evidence was that the church corporation, after it had taken its lease, erected a synagogue upon the demised premises at a cost of $2,632; that they used the building for purposes of worship from the time it was finished down to the date of their eviction by the holders of the paramount title. When they lost their hold upon the property they lost the building also, and the question is now mooted, whether the

cost of the building can be included in the damages. This court held on the former argument that the church corpora-. tion was entitled to damages, and that its damages would be measured by the loss of its bargain. In *Drake* v. *Baker*, *supra*, and in *King* v. *Ruckman*, 9 *C. E. Gr.* 305, it was held that where a vendor of real estate unwarrantably refuses to execute his contract, the rule of damages applicable in cases of the sale of personal property is in all respects apposite, and that the measure of damages is the difference between the contract price and the market value at the stipulated time of delivery.

The market value at the stipulated time of delivery would include any improvements placed upon the property by one who had a valid contract for purchase. If this were not so, leaving out of consideration the equitable remedies which such purchasers might have, we would be led to the unjust and anomalous conclusion that at common law, at least, a dishonest vendor, by refusing to convey in accordance with his covenant, could retain title not only to the land which he has agreed to convey, but also to all improvements which the contracting vendee, relying upon his contract of purchase, might have placed thereon. As to these improvements, the vendee would be absolutely without remedy at law.

Again, what did the church corporation lose by its bargain? Manifestly it lost not only the land, but the building also. What did the reversioner gain by reason of the fact that the church corporation was unable to enforce its contract against him? He gained the increased value of the land and he gained the building. If he gained these, somebody must have lost them. No one could have lost them except the church corporation, and that, I submit, answers the question.

The building was a brick structure. It was a fixture. There was no reservation of it to the lessees. It was not a trade fixture. It could not have been removed by the church corporation under any circumstances. Upon the death of John Snyder, in April, 1892, the building went with the land to the reversioner. The leasehold was thus terminated with-

out notice, and even if the building had been removable as between the church corporation and John Snyder, it was not removable as between the church corporation and the reversioner.

The exact point arose in *Errickson* v. *Bennett*, 39 *Minn.* 326. It was there held that in a case of fraud or where one contracts to convey knowing that he has no title and cannot perform on his part, the damages for breach of the contract may include reimbursement for improvements put on the estate by the vendee. In that case the vendor never had title and knew that he did not have title. He contracted to sell the land. The vendee paid the purchase-money or a portion of it, entered into possession and erected a house upon it. When he was evicted by a paramount title, he brought suit against the vendor. In that action the jury was instructed to find not only for the purchase-money paid, but also for the value of the improvements. The direction was sustained by the appellate court, and the admission of evidence of the value of the building erected by the purchaser was approved.

In the case at bar Snyder was life tenant. He knew that he had no title, and so far as the case shows, he had made no agreement, nor had he entered into any negotiations with his sons, who did own the title, for the purchase of it by himself, or for the conveyance of it by them to the church corporation. The defect in the title was unknown to the officers of the purchasing corporation. Snyder stood by and saw the vendee expend its money in the erection of a building upon lands which he knew he did not own.

In *Sedgw. Dam.* (*8th ed.*), § 1017, occurs this paragraph : " Where a plaintiff was let into possession under the contract, he may recover the reasonable value of the improvements, less the value of the use of the land, probably in all cases, but certainly when the defendant knew he had no title," citing *Bellamy* v. *Bagsdale*, 14 *B. Mon.* 364; *Sheard* v. *Wellburn*, 67 *Mich.* 389, and *Errickson* v. *Bennett*, *supra.*

The whole subject is discussed by Mr. Sedgwick from both

the English and American standpoints in *Sedgw. Dam. (8th ed.)*, § 1001, and the following.

The English rule, which, in a case of fraud on the part of the vendor, would drive the vendee to an action for deceit, has not been generally adopted in America. The result of Drake *v.* Baker is a flat repudiation of it. In the very recent publication of *Maupin on Marketable Title to Real Estate*, § 90, and the following, occurs a very full discussion of the subject with a citation of all the leading English and American cases.

From these discussions and from the cases cited, I take the rule to be that any state of facts which would entitle the plaintiff under the authority of Drake *v.* Baker to damages arising out of the increased value of the land, would also entitle him to the value of improvements placed upon the land by him before he had notice of the defective title.

Some of the cases called attention to the analogy, so far as the measure of damages is concerned, between actions like the one at bar and actions for breach of the covenant of warranty. The analogy is more fanciful than real. One is an executory, the other an executed contract, and I have no doubt but that in a case where damages arose from a breach of the covenant of warranty, the warrantor, in case he knew of his defective title, and, nevertheless, warranted it, could by proper action be compelled to reimburse the vendee for the cost of buildings and improvements. I see no reason why an action for deceit should not lie in a case of that character.

The opinion of the court was delivered by

VAN SYCKEL, J. On the 1st of March, 1884, the plaintiff's testator, John Snyder, entered into a lease with the defendant in error for premises known as No. 226 Washington street, in the city of Newark, New Jersey, for the term of five years from April 1st, 1884. The lease contained a stipulation for a further term of five years, provided notice should be given by the lessee three months before the expiration of the term of the election of the lessee to take a further

term. On the 12th of October, 1888, notice was given by the lessee that a further term was desired. · No new lease was actually executed, but the lessee continued in possession of the premises after the expiration of the first term. The plaintiff's testator died in April, 1892, during the running of the second term of five years.

The lease of March 1st, 1884, contained the following clause: "And further, that if the said party of the second part shall desire to purchase the demised premises, that he [the lessor] will at any time during the tenancy hereby created or agreed upon, for the consideration of seven thousand dollars, sell and convey by warranty deed, with the usual covenants, free and clear of all encumbrances, the demised premises to the said party of the second part, or such person or persons as they shall desire, upon their giving to him, his heirs, executors or administrators, notice that they desire such conveyance; such conveyance to be made within thirty days after giving of such notice, and the payment of rent to cease at the delivery of such deed, and if not delivered within the said thirty days, then said rent to cease at the end of that time."

After the death of Snyder, the lessor, to wit, on the 1st day of June, 1892, a demand was made upon the executor of Snyder for a conveyance pursuant to the aforesaid provision. He was unable to make a conveyance because the testator had a life estate only in the premises as tenant by the curtesy, the title to the property having been in the wife at the time of her decease, which was before the lease was made.

This suit was instituted for a breach of the covenant to convey pursuant to the demand made upon the lessor's executor.

The sole question to be decided is the measure of damages in this action on contract.

Immediately after entering into possession under the lease, in 1884, the defendant in error built a synagogue upon the premises and expended thereon over $2,600. This money was expended before a demand for a renewal of the lease and several years before a conveyance was demanded.

On the trial below the defendant in error recovered damages for the loss of his bargain arising out of the increased value of the land, and also damages for the loss of the building which had been erected upon the premises.

Upon the question as to damages arising from an appreciation in the value of the land, the trial judge was bound by the decision of the Supreme Court of this state in *Drake* v. *Baker*, 5 *Vroom* 358, and he properly followed that case.

The first question to be determined is whether the rule adopted by our Supreme Court in Drake *v.* Baker shall be adhered to.

Under the long-settled law of this state if Snyder had conveyed in his lifetime to his lessee with a covenant of warranty, and if thereafter the grantee had been evicted by the remaindermen, in an action on contract for damages flowing from a breach of the covenant of warranty, the only damages recoverable would have been the consideration money paid and the interest thereon; and if the purchase-money was wholly unpaid, nominal damages only could have been recovered. *Stewart* v. *Drake*, 4 *Halst.* 139; *Holmes* v. *Sinnickson*, 3 *Gr.* 313; *Morris* v. *Rowan*, 2 *Harr.* 304.

This rule has been so long recognized in our jurisprudence that it cannot now be subverted.

That there is no substantial difference in the injury resulting, where there is an ouster after conveyance with warranty, and where there is a refusal of conveyance in pursuance of the contract to convey, when the vendor is unable to make title, which can reasonably support a rule for damages in the former case wholly different from that which prevails in the latter case, is too obvious to require discussion.

The injury in both cases is the same—the loss of the property, the loss of such profit as would have been incident to increased value.

The loss in both cases arises from the breach of the vendor's covenant on account of the defect in his title.

There can, therefore, be no solid basis for diversity in the

rule of damages applicable to the two conditions, and the rule should be unified if there is no serious obstacle in the way.

The rule in Drake *v.* Baker was adopted upon the authority of the English cases, which at the time of the decision of that case had limited the application of the rule laid down in *Flureau* v. *Thornhill,* 2 *Bl. R.* 1078, that on breach of contract to convey, where the vendor's title proved defective, nominal damages only could be recovered. The exceptions engrafted upon Flureau *v.* Thornhill in *Pounsett* v. *Fuller,* 17 *C. B.* 660; *Robinson* v. *Harman,* 1 *Wels., H. & G.* 849; *Engel* v. *Fitch, L. R.,* 3 *Q. B.* 314, and *Hopkins* v. *Grazebrook,* 6 *Barn. & C.* 31, all cited in Drake *v.* Baker and there relied upon, greatly narrowed the sphere in which Flureau *v.* Thornhill would be a controlling authority.

Since Drake *v.* Baker was decided this rule has been most elaborately and exhaustively discussed and reviewed in the House of Lords in England, in the case of *Bain* v. *Fothergill,* reported in *L. R.,* 7 *H. L.* (*Eng. & Ir. App. Cas.*) 158, and the rule in England finally settled by discarding the distinctions which had been previously engrafted upon the case of Flureau *v.* Thornhill, in the cases relied upon in our court in Drake *v.* Baker.

In Bain *v.* Fothergill the defendants were in possession of a mining royalty, under a written agreement for a lease, of which they had taken an assignment from one H. In H.'s agreement for a lease with the owners, it was stipulated that he should not assign without their permission. The defendants contracted with the plaintiff to sell their interest in the royalty, and this action was for the breach of that contract, in consequence of the inability of the defendants to make title for want of the owners' assent to the assignment to them.

The owners were willing to consent to the assignment to the plaintiff, if he would stipulate not to assign without their permission. One of the defendants knew that this consent was necessary, the other did not.

The Court of Exchequer held the case to be within the

rule in Flureau *v.* Thornhill, and gave judgment for nominal damages only.

The case was carried to the House of Lords and there affirmed.

Three questions were propounded by the Lord Chancellor to the judges:

*First.* Whether upon a contract for the sale of real property, where the vendor, without his default, is unable to make a good title, the purchaser is by law entitled to recover damages for the loss of his bargain.

To this the answer was, he is not entitled.

*Second.* Whether the actual possession of the property, the subject of the contract, is essential to bring the case within the rule laid down in Flureau *v.* Thornhill.

To this the answer was in the negative.

*Third.* Whether, if the rule of law is correctly laid down in Flureau *v.* Thornhill, the circumstances of the present case distinguish it and take it out of that rule.

To this the reply was also in the negative.

The discussion in Bain *v.* Fothergill is most able and interesting, and after a thorough review of all the previous English cases the House of Lords expressed the opinion that Flureau *v.* Thornhill was established law, and that Hopkins *v.* Grazebrook was no longer the rule; that Flureau *v.* Thornhill applied to every case where the vendor failed to convey through inability to make title; that the rule was the same whether the vendor had been guilty of fraud or not, for the motive of the defendant was immaterial in measuring damages for breach of contract, and that, therefore, even if there had been fraud, the vendee could not have recovered substantial damages in contract, but must have proceeded in an action for deceit.

The cases upon which the doctrine approved in Drake *v.* Baker was rested having been so completely overruled by the English court, that case should, in our judgment, be now disregarded, and the law in this state be made harmonious in the two instances, where there is in all material respects pre-

cise similarity of circumstances, and no difference of substance, upon which to support a difference in the rule of damages.

Where fraud or deceit enters into the transaction the vendee should be left to his action for deceit to recover for the loss he may sustain thereby.

On this branch of the case nominal damages only should have been recovered.

The only question submitted to this court in the case reported in 28 *Vroom* 395 was whether the covenant to convey applied to the renewal period of five years. The rule of damages applicable to the case was not discussed, nor did the court intend to make any deliverance on that subject.

The question remains, whether the lessee was entitled to recover for the cost of the improvements put upon the premises as before stated.

The first term under the lease ran from April 1st, 1884, to April 1st, 1889.

The improvements included in the damages recovered below were all made soon after the lessee entered into possession, in 1884, and the demand for a conveyance was not made until after the lessor's death in 1892.

The lease contained the following covenant: "And the said party of the second part [the lessee] hereby agree that all improvements of any kind made on or about the said premises shall be and become the property of said party of the first part at the expiration of this lease or any renewal thereof."

The covenant in the lease is simply to convey land; there is no agreement to convey land and buildings erected thereon by the lessee after entry.

Under the common law rule, buildings erected on the premises by the tenant become part of the freehold, and are the property of the lessor without any allowance to the tenant.

An exception has been engrafted on this rule that, under certain circumstances, gives the tenant the right of removal before the expiration of his term. But the common law rule is still so rigidly adhered to that if a tenant, at the end of his

term, renews his lease, and thereby acquires a new interest in the premises, his right to remove improvements is forfeited, unless he takes the precaution to reserve such right in the renewal lease.

This is the established English rule, and it has also received the sanction of the New York Court of Appeals, in *Loughran* v. *Ross*, 45 *N. Y.* 792, where the English cases are cited and relied upon.

In *Smith* v. *Administrators of Smith*, 4 *Dutcher* 208, Chief Justice Green distinguishes between a vendee in possession under a parol agreement to purchase, who makes improvements expecting them to be for his own benefit and not at the instance of his vendor, and a tenant who makes improvements under the assurance of his landlord that he shall have a conveyance of the premises with the improvements.

In the former case he denies the right of the vendee to compensation on failure to obtain a conveyance.

This accords with the doctrine of the English court as pronounced in *Worthington* v. *Warrington*, 8 *Man., G. & S.* 133. There the party entered into possession under an agreement for a two years' term, with leave to make improvements at his own expense, with the option of purchasing at any time during the two years.

The lessor, it afterwards appeared, had no title to the premises, and the action was brought to recover damages for breach of the contract and for the cost of the improvements.

The court said : " If the purchaser thinks proper to enter into possession and to incur expenses in alterations before the title is ascertained, he does so at his own risk.   I see nothing in this case to distinguish it from the ordinary one.   The plaintiff should have taken care to ascertain that the title was good before he proceeded to lay out money upon the premises."

The reason which lies at the foundation of the rule in Flureau *v.* Thornhill pertains here, and is clearly expressed by Lord Hatherly in Bain *v.* Fothergill.

In distinguishing Engel *v.* Fitch he said : " The vendor in that case was bound by his contract to do all that he could to

complete the conveyance. Whenever it is a matter of conveyancing and not a matter of title, it is the duty of the vendor to do everything that he is enabled to do by force of his own interest and also by force of the interest of others whom he can compel to concur in the conveyance. The foundation of the rule in Flureau *v.* Thornhill has been already more clearly expressed by my noble and learned friend who has preceded me in saying that having regard to the very nature of this transaction in the dealings of mankind in the purchase and sale of real estate, it is recognized on all hands that the purchaser knows on his part that there must be some degree of uncertainty as to whether, with all the complications of our law, a good title can be effectively made by his vendor, and taking the property with that knowledge he is not to be held entitled to recover any loss on the bargain he may have made if, in effect, it should turn out that the vendor is incapable of completing his contract in consequence of his defective title."

In this case it must be held that the lessee made the improvements at his own risk and not under an assurance that a title would be given including such improvements, inasmuch as they were made long before the lessee announced his election to purchase.

The rights of the parties must be adjudged according to the *status* at the time the improvements were made, and that was the relation of landlord and tenant.

The question now under discussion does not, in fact, differ from the question previously disposed of.

By the renewal of the lease without any provision as to the buildings put upon the premises by the tenant, such buildings as before stated became incorporated with the real estate and were the property of the lessor and the remainder-men. The subsequent election of the tenant to take a conveyance gave him a right to a conveyance of the real estate of which the buildings were part, and from which they were no longer, in legal contemplation, separate. The buildings could no longer be considered as improvements made by the

lessee.   The recovery of nominal damages for failure to convey will satisfy the legal claim for damages for failure to convey both land and buildings, the two being now one and inseparable.

Where there is a contract to convey unimproved land, and the vendee before conveyance erects buildings upon it without the request of the vendor, it would be a rule of exceeding hardship which compels the vendor, when his title proves defective, to pay the cost of such improvements to any extent which the vendee might choose to put upon it.   Such a result could not reasonably be supposed to have been within the contemplation of the parties when the contract was executed. The vendor would be compelled to pay for improvements which he did not authorize to be made, and from which he would derive no benefit whatever if the vendee failed to perform on his part.

In my opinion, the judgment below was also in this respect erroneous, and it should, therefore, be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON.  13.