## Kentucky Consumers Oil Co. et al. v. General Bonded Warehousing Corporation et al.

Jan. 16, 1945.

162

Earl C. Frankenberger and L. H. Hilton for appellants.

Grover G. Sales and Carl K. Helman for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The suit is for damages allegedly sustained by appellee, General Bonded Warehousing Corporation, by reason of the breach by appellants of an option agreement dated November 17, 1942, whereby appellants agreed to convey to appellees certain real estate and personal property described in the option agreement, should appellees exercise the option and pay the purchase price agreed upon. At the conclusion of the evidence, both plaintiffs and defendants filed motions for directed verdicts; defendants' motion was overruled, that of the plaintiffs sustained, to which defendants excepted. The jury returned a verdict in the sum of Four Thousand Four Hundred Sixty Dollars ($4,460), on which judgment was entered. By the agreement of No-

vember 17, 1942, in consideration of the sum of One Hundred Fifty Dollars ($150), appellants granted to Walter L. Borgerding, his heirs and assigns, the exclusive right and option to purchase the property therein described at any time within fifteen (15) days from the date of the agreement, for the sum of Fifty Thousand Dollars ($50,000), and to execute therefor a deed conveying the property free of encumbrance. Mr. Borgerding immediately organized a corporation, to which he assigned the option. The option agreement was entered into with knowledge on the part of appellants that Mr. Borgerding had arranged with the Defense Supplies Corporation (a subsidiary of the Reconstruction Finance Corporation), to lease to it the property described in the option agreement, contingent upon securing clear title thereto. The terms of the proposed lease provided for the payment by the Defense Supplies Corporation to Mr. Borgerding's assigns a fixed rental of One Thousand Dollars ($1,000) per month, plus one-fourth of one cent per gallon for receiving, and one-fourth of one cent per gallon for shipping, alcohol to be stored in tanks on the property. The lease was to continue for six months after the cessation of hostilities in the present war. An abstract disclosed the fact that the property was mortgaged to a third party in the sum of Five Thousand Dollars ($5,000) and further burdened by a recorded lease to R. J. Brown, of St. Louis, Missouri. On the twenty-fourth day of November, 1942, and again on the first day of December, 1942, Borgerding advised appellants that his Corporation had authorized him to exercise the privilege of purchasing the property granted in the option; but notified appellants of the mortgage and lease, and suggested that they arrange to free the property of these encumbrances. He did not tender the purchase price of the property, or demand the immediate delivery of a general warranty deed. It is contended by appellants that the privilege of the option was not exercised, by reason of the failure of appellees to tender the purchase price and demand delivery of a deed on or before December 1, 1942.

By the terms of the option, the purchase price was not to be paid until appellants delivered a deed to the property, with covenant of general warranty. Neither on November 24, nor on December 1, did appellants place themselves in position to deliver a general warranty deed; although it is conclusively shown by the evidence

they could have obtained a cancellation of the Brown lease, and could have paid off the mortgage debt as early as December 29, 1942. In 66 C. J., Sec. 22, p. 499, it is said:

"An acceptance according to the terms of the option is not rendered conditional by mere suggestions for some future modification, nor by demands as to performance which do not qualify the acceptance, nor by being conditioned upon the performance by the optioner of what he was obligated to do by the terms of the contract."

In Johnson v. Benjamin, 219 Ky. 169, 292 S. W. 801, 802, the Court said:

"* * * when the stipulations of the contract (option) are concurrent, as where the deed is to be delivered on the payment of the price, an actual tender and demand by one party is necessary to put the other in default. 27 R. C. L. 457. However, the law does not require an idle ceremony, and no tender of a deed on the part of the vendor is necessary to put the purchaser in default where he has already announced that he will not carry out the contract, or has otherwise waived the necessity for a tender."

The converse of this proposition is true; that is, in general, a tender on the part of the vendee is necessary to put the vendor in default, but it is not necessary for the vendee to tender the purchase price, where the vendor has waived the necessity for a tender. Both parties knew on November 24 and on December 1, that, because of existing encumbrances appellants could not deliver a general warranty deed; but the proof shows conclusively that appellants knew, and appellees did not know, that a cancellation of the Brown lease could have been obtained before December 1, 1942. That being true, their failure to rid the property of the encumbrances amounted to an announcement that they would not carry out the contract. Under the circumstances, the tender of the purchase money would have been "idle ceremony," for which reason such action on the part of appellees was not prerequisite to accepting the privileges granted by the option. Appellees showed their ability to pay the purchase price, the President of the Corporation having secured and placed in the Bank to the credit of the Corporation the Fifty Thousand Dollars ($50,000) required to consummate the purchase. It is apparent that appellees performed all acts necessary to consummate the

privilege granted them under the option agreement; and appellants rendered themselves liable to them by failing to perform the obligation they assumed under the agreement. That being true, the Court properly overruled appellants' motion for a peremptory instruction, and properly sustained appellees' motion therefor.

Complaint is made of the instruction on the measure of damages, which was given as follows:

"1. You will find for the plaintiff and will award it such sum in damages as you may believe from the evidence fairly represents the damage to which it was put by the failure of the defendant to carry out the option agreement, the award not to exceed $16,000.00, less such sum as you may believe from the evidence would have been the necessary and fair expenses of the plaintiff in the operation of the plant; such sum not to be less than $4460; the whole award to the plaintiff not to exceed $12,537."

At the time of the trial, ten months had transpired since the date appellants agreed to deliver the property under the option agreement, and, of course, the war was still in progress. Under the agreement of lease, appellee, at the time of the trial, would have been entitled to have received at least Sixteen Thousand Dollars ($16,000) in gross rent, since the lease agreement was to continue in effect for six months after the termination of the war. The complaint of the instruction is that it is ambiguous, and from it the jury could have mistakenly concluded that their finding must not be less than Forty-Four Hundred Sixty Dollars ($4460). It is contended that the alleged ambiguity was prejudicial to appellants' substantial rights, because the verdict rendered was in the exact sum of Forty-Four Hundred Sixty Dollars ($4460). It is unnecessary for us to determine whether the instruction as given was ambiguous. It is obvious appellants were not prejudiced. At the time of entering into the option agreement, appellants were informed of the contract of lease contemplated by the prospective purchasers of the property. The measure of damages, under the circumstances of the case, is correctly stated in Baker et al. v. Morris et al., 168 Ky. 168, 172, 181 S. W. 943, 945, wherein quoting from 8 R. C. L. 459, it is said:

" 'In addition to general damages, the injured party is entitled to recover special damages which arise from

circumstances peculiar to the particular case, where those circumstances were communicated to or known by the other party at the time the contract was made; that is, he may recover such damages as are the reasonable and natural consequences of the breach under the circumstances so disclosed, and as may reasonably be supposed to have been in the contemplation of both parties. In such case, the special circumstances become an implied element of the contract, and of the duty thereby imposed.'

\* \* \* \* \* \*

"'Loss of profits growing out of an existing collateral or subordinate agreement may be recovered where they were within the contemplation of the parties when the original contract was made; but, as in other cases of special damage, the defendant must have had notice of such collateral contract at that time.'"

See also American Law Institute's Restatement of the Law on Contracts, Vol. 1, Sec. 330; 88 A. L. R., p. 1439 et seq. In Asher v. E. S. Howard & Son., 178 Ky. 398, 198 S. W. 1149, 1150, the rule is stated:

"There can be no question that where special circumstances have been communicated to a party at the time of the making of a contract, which go to show that the breach will involve special damages, such damages may be recovered, although not the result of an ordinary breach. Hence when a party makes a contract and then notifies the other contracting party that such contract is made with reference to a contract already entered into or contemplated between him and a third party, he is not confined to ordinary damages for violation of the original contract, but may recover such damages as necessarily result from the breach, or the profits which he would have realized from such other contract, had the contract sued on been performed. Pulaski Stave Co., etc., v. Miller's Creek Lumber Co., etc., 138 Ky. 372, 128 S. W. 96; \* \* \*."

There is no conflict in the evidence concerning the special damages. Mr. Borgerding testified that the gross rental for the period sued for was Sixteen Thousand Dollars ($16,000). He charged against this amount operating expenses for the period in the sum of Three Thousand Nine Hundred Sixty Dollars ($3,960), and premium on the bond required by the government agency in the sum of Five Hundred Dollars ($500). Appellants

did not offer any testimony concerning the probable expense of operating under the lease. The evidence in respect to damages, therefore, is uncontradicted, and shows appellees to have lost the sum of Eleven Thousand Five Hundred Forty Dollars ($11,540). The Court should have instructed the jury to find for appellees in this amount. Since the finding of the jury was in a sum considerably less than this, appellants were not prejudiced, even should it be conceded that the instruction given was erroneous. It is conceivable that the amount appellee was entitled to recover could have been reduced by the introduction by appellants of evidence concerning additional expenses incident to the operation of the lease; but they did not do so, and cannot complain in that respect.

The judgment is affirmed.