MARSHALL WADE, D/B/A WADE CONSTRUCTION
CO. *v.* PIONEER CONTRACTING CO., INC.

5-4385                                          424 S. W. 2d 852

Opinion delivered March 4, 1968

*Bruce Ivy* and *Wright, Lindsey & Jennings,* for appellant.

*William V. Alexander* and *Henry J. Swift,* for appellee.

CONLEY BYRD, Justice. Appellant Marshall Wade, d/b/a Wade Construction Company, appeals from a

judgment in favor of Pioneer Contracting Company, Inc., rendered upon Wade's alleged nonperformance of his subcontract with Pioneer for the common excavation and low-grade embankment material on a two-mile section of Interstate Highway 55 in Mississippi County, Arkansas. Sections 2 and 3 of the subcontract, being the two items here involved, provided:

"Section 2. Subcontractor and contractor agree that the items of work to be performed by subcontractor on the above general contract and the prices the subcontractor is to receive are as follows:

| ITEM NO. | APPROX. QTY. | UNIT | DESCRIPTION | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| SP&103 | 112,937* | CY | Common Excavation | $ .30 | $33,879.90* |
| SP&105 | 64,729* | CY | Embankment Material | $ .40 | $25,891.60* |

*The figures given under approximate quantities and the extended total price are approximate ones and represent all of the described items between station 350/00 to station 464/00 on the above described general contract, and is exclusive of all upgraded material.

Section 3. Subcontractor agrees to complete the above items of work promptly and in such manner that other items of work under the general contract will not be delayed. If such a delay in the completion of the general contract be caused by subcontractor, and such delay shall result in liquidated or other damages being assessed against contractor on such general contract, the subcontractor agrees to be liable for and to pay such damages for which he is directly responsible and any expense of the contractor incident thereto."

Wade commenced the job in 1960 and moved most of the dirt yardage involved, except on the north 200 feet thereof, which was held up because of a culvert or bridge that had not been completed by another subcon-

tractor. He returned to the job in 1961 and left it in October of that year. The testimony is conflicting as to whether Wade had finished his job when he left in 1961, but a preponderance thereof shows that there remained work to be done on grades, the cutting of median ditches, and the finishing of slopes. Pioneer did not complete its contract with the Highway Department until May 1963. Of course, during the intervening time some deterioration occurred which required additional work by Wade.

It is undisputed that the yardages estimated by the Highway Department prior to construction, set out in Section 2 of the subcontract, were greatly overestimated. The final cross sections show that 104,568 cubic yards of common excavation and 9,301 cubic yards of low-grade embankment were moved in complying with sections 103 and 105 of the Highway Commission specifications.

The matter was referred to a special master, who allowed Wade credits for $3,955.39 in retainage; $1,125 for right-of-way clearing not in the contract; and $1,-115.68 wrongfully withheld by Pioneer for drainage work. In making this computation the master disallowed all moving expense claimed by Wade and the item of $3,260 expended by Wade for removal of mud and dirt placed in Wade's drainage ditch by the bridge contractor. He computed the items alleged in Pioneer's cross-complaint as follows:

| Section No. | Item of Damage | Amount |
| --- | --- | --- |
| (a) | Cutting trench and riprap excavation | $ 5,096.00 |
| (b) | Clearing underbrush | 908.48 |
| (c) | Completion of Wade's work | 16,986.16 |
| (d) | Deterioration of Pioneer's portion of job | 17,445.42 |

| | | |
|---|---|---:|
| (e) | 10% of total overhead | 9,905.91 |
| (f) | Deterioration of sand | 11,065.91 |
| | | $61,407.48 |
| | Less Wade's credits | 6,196.07 |
| | | $55,211.41 |

## I

Since Pioneer's general contract with the State Highway Commission contained a $150-per-day liquidated damages provision if Pioneer failed to complete the work within 320 working days, Wade contends here that this provision was incorporated into his subcontract by section 3 above. Upon this premise he then contends, citing 22 Am. Jur. 2d *Damages* § 235 (1965), that a liquidated damages clause substitutes the amount agreed upon as liquidated damages for the actual damages, and that no sum larger or smaller than the amount stipulated in the contract can be awarded.

Based upon this contention, Wade contends that the foregoing items of damages (d), (e) and (f), as determined by the special master and awarded by the chancellor, are delay damages that Pioneer is not entitled to collect, since Wade's performance did not result in liquidated damages being assessed against Pioneer.

Wade's basic premise is not supported by section 3 of the subcontract. The second sentence is cumulative and was apparently inserted to prevent any controversy on Pioneer's right to recover delay assessments made against it by the Highway Department. See *Kentucky Consumers Oil Co.* v. *General Bonded Warehouse Corp.*, 299 Ky. 161, 184 S. W. 2d 972 (1945). Therefore we affirm the chancellor as to items (d), (e) and (f) in the master's report.

## II

With respect to item (b), appellant makes the same contention on delay that is set forth above regarding

items (d), (e) and (f). We find this contention without merit for the reasons there stated.

In addition appellant argues that item (b), in the amount of $908.48 for clearing underbrush, comes within section 102 of the Highway Commission specifications. Section 102 is applicable only to clearing the right-of-way of trees and is a matter that is required to be completed before the excavation is undertaken. The proof shows that item (b), $908.48, covered work done by Pioneer in Wade's absence to clear the right-of-way of weeds and other undergrowth. Therefore we hold that the chancellor properly allowed item (b), in the amount of $908.48 for clearing underbrush, under section 103.5 of the specifications.

## III

Under item (a) of the damages the court allowed, in toto, the sum of $5,096 for equipment rental in cutting trench to grade, setting trench bottom, and excavation for structural riprap for the period from August 22, 1961 through August 31, 1961. In neither pleadings nor testimony are the equipment rental and labor broken down among these three items. All of Pioneer's expenses on the three items are listed without allocation.

Appellant contends that where there is evidence as to damage from various causes, a portion of which Wade could not be held responsible for, and no evidence on pro-ration of the damage resulting from the separate causes, then the proof is too uncertain to permit the allocation to Pioneer of part or all of the proved damages. 25 C. J. S. *Damages* § 28 (1966).

Appellee agrees with appellant's theory of the law but contends that in this instance the theory is not applicable because the excavation for structural riprap was an item to be paid for under item 103.5 of the specifications. Item 103.5 provides as follows:

"103.5 Basis of Payment. The yardage of 'Roadway Excavation' measured as provided above, shall be paid for at the contract unit price per cubic yard bid for 'Solid Rock Excavation', 'Common Excavation' or 'Unclassified Excavation', as the case may be, which price shall be full compensation for all light clearing and light grubbing; *for all excavation;* for all drilling and blasting; for formation of embankment; for all compaction where Special Compaction of Earthwork (Section 107) is not specified as a pay item; for all watering and aerating of soil; for trimming of slopes; for disposal of surplus material; for all hauling within the free haul limits; for preparation and completion of subgrades and shoulders of roadway; for final clearing up of the right-of-way; and for all labor, tools, equipment and incidentals necessary to complete the work." (Emphasis supplied.)

Appellant, on the other hand, contends that the structural riprap is an item to be paid for under "riprap." Section 909.5 of the general contract provides as follows:

"909.5 Basis of Payment. Riprap placed and accepted and measured as provided above, shall be paid for at the contract unit price per cubic yard bid for 'Riprap,' which price shall be full compensation for furnishing and hauling all material, for all quarrying involved, *for necessary excavation* and back fill, and for all labor, equipment, tools and incidentals necessary to complete the work." (Emphasis supplied.)

We agree with appellant that the excavation for structural riprap is an item to be paid for under section 909.5. We are led to this because common excavation and riprap excavation would not necessarily carry the same price, and section 909.5 specifically points out that the payment for riprap includes the payment for necessary excavation and backfill in connection therewith. Therefore we hold that the chancellor improperly allowed the

sum of $5,096 under item (a) of the damages as against appellant.

## IV

Included within the $16,986.16 allowed under item (c) is $6,172.50 paid to Harvey Durham for completing a portion of Wade's subcontract. In this connection Durham testified that as part of his work in finishing Wade's subcontract he also finished the upgrade portion of the embankment for Pioneer. Pioneer readily concedes that the upgraded portion of the embankment was its responsibility and not Wade's. Since no allocation of charges was made by Durham between work done for Wade and work done in performing Pioneer's portion of the upgraded embankment, we hold that the trial court erred in allowing the item of $6,172.50.

Therefore, we reduce item (c) of the damages allowable to Pioneer to the amount of $10,813.66.

## V

On the $3,260 Wade expended to clear the bridge contractor's waste material from the right-of-way, the only basis shown for disallowing this item is the master's finding that if Wade expended the money therefor his cause of action would be against the bridge subcontractor and not Pioneer. All the evidence shows that Wade did spend $3,260 to remove the waste material from the ditches in addition to the yardage he moved under his subcontract. It appears to us that such removal would have been necessary in the performance of Wade's contract and that as between Wade and Pioneer, Wade was entitled to charge the cost thereof against Pioneer.

Therefore, we hold that Wade is entitled to an additional credit of $3,260.

## VI

Wade argues that the court erred in determining that he breached his contract. As we view the facts it is definitely established that Wade did not completely perform his contract, and that the work he did was not done promptly within the terms of the contract. It is undisputed that Wade went out of business, having sold his equipment in 1962 before the job was finished.

Therefore, we conclude that the chancellor properly ruled in favor of Pioneer on this issue.

Wade contends that he was entitled to the difference between the actual quantities moved and the estimated quantities contained in his contract. This contention is without merit, for section 2 of the contract clearly provides for payment on a unit price rather than a total consideration.