King *v.* Ruckman.

## KING *vs.* RUCKMAN.

1. A vendor of real estate, who unwarrantably refuses to accept the instalments of purchase money stipulated in the contract of sale, declares the contract at an end, because they were not offered at the time prescribed, and retains possession of the premises, is not entitled to interest on such moneys from the dates fixed for their payment by the contract, to the date of the final decree enforcing specific performance.

2. Where, under a contract for the conveyance of real estate, a certain sum was to be paid on the delivery of the deed, and the balance was to be secured by mortgage payable in five equal annual instalments from the date of the agreement, but by reason of the vendor's refusal to perform his contract, and of the delays in the suit brought to enforce it, five years elapsed before final decree compelling performance was obtained, the vendee will not be required to pay such balance in cash, but it may be secured by mortgage upon the terms provided in the contract.

3. The rule of law, that where a vendor of real estate unwarrantably refuses to execute his contract, the rule of damages applicable in cases of sale of personal property is in all respects apposite, and that the measure of damages is the difference between the contract price and the market value at the stipulated time of delivery, adopted as the rule for the measurement of damages in a suit for specific performance, where it sufficed for the equities of the case.

4. Compensation or allowance to either party in respect to lands which the vendor held contracts for, but was unable to convey, refused.

*Mr. W. L. Dayton* and *Mr. C. Parker*, for complainant.

*Mr. Weart* and *Mr. Vanatta*, for defendant.

THE VICE-CHANCELLOR.

By a written contract of May 12th, 1868, Elisha Ruckman agreed to sell and convey certain lands to Benjamin W. King. Ruckman afterwards refused to convey, and King thereupon filed his bill for specific performance. By a final decree of the Chancellor duly made in the cause, the bill was dismissed. On the 5th of December, 1870, this decree was reversed by the Court of Appeals, and the bill and proceedings remitted to this court, to make a decree in favor of complainant in conformity with the directions of the appellate tribunal.

By the terms of the contract, Ruckman was to sell and convey two descriptions of premises: first, all the lands that he owned, and second, all the lands that he held contracts for, within certain geographical limits—being the counties of Rockland, New York, and Bergen, New Jersey, and also two lots in Hackensack—containing in all about two thousand acres, for the price of $275 an acre. $100 was paid at the execution of the contract; $19,900 were to be paid on the first of the following June; and $80,000 on the first of the following July, when the deed was to be delivered, and the balance of the purchase money secured by mortgage on the premises, payable in five annual equal sums from the date of the agreement, with interest at six per cent. yearly.

By the terms of the order of the Court of Appeals, Ruckman is to execute the contract so far as he has the ability to do so, provided if he shall be able to perform it in part only, then the value of the lands embraced in the contract and which he is unable to convey, shall be ascertained, and damages awarded to the complainant or allowance made to the defendant, as the principles of equity may require. If the contract cannot now be fully executed, it is directed to be carried into effect on equitable principles, as far as circumstances will admit.

To ascertain the facts in respect to the matters involved in the foregoing directions, reference was made to a master, and upon the. coming in of his report, both parties having excepted thereto, the cause has been brought by consent to final hearing upon the report, the exceptions and the evidence, to the end that a final decree might be made in accordance with the order of the Court of Appeals. In the decree afterwards made as recommended by me, several particulars were adjusted, to which it is unnecessary now to refer. The questions of principal importance then decided, and which are further to be controverted, are three. It will be sufficient to state briefly, the grounds on which they were decided.

*First.* As to the interest upon the purchase money during the five years, or thereabouts, that intervened between the dates fixed by the contract and the date of the final decree. The purchase money, with the exception of the $100 paid when the contract was signed, having been refused to be accepted by Ruckman when he refused to execute the contract, and subsequent possession of the premises having also been retained by him, is he entitled to interest on the principal during this interval, as well as the principal itself?

*Second.* $100,000 of the purchase money was to be paid at or before the delivery of the deed, and the balance to be secured by mortgage, payable in five equal instalments. The five years having elapsed, is a mortgage of like terms to be given for the balance of principal, or is the balance to be paid now in cash?

*Third.* What compensation or allowance, if any, is to be made to either party in respect to lands which Ruckman held contracts for but is unable to convey?

The quantity of lands which he owns and is able to convey, is one thousand three hundred and fifty-three acres and seventy-seven hundredths of an acre. At $275 an acre, the total price is $372,286.75. Deducting $100,000 for purchase payments as above, the unsettled balance is $272,286.75. The rents and proceeds on the other hand, of the lands which Ruckman has continued in possession of, are inconsiderable

and reported by the master to be equalled by the taxes. Whether, therefore, interest for five years in the past, and time of payment for five years to come at six per cent. interest, be allowed on the above mentioned sums respectively, are obviously important questions of amount, but my conviction is strong, that except for the magnitude of the amount they involve, little or no hesitation would be felt in deciding them.

It seems to me clear that Ruckman is not entitled to the interest, and that the complainant is entitled to give the mortgage for the above stated balance, for the time it would have run, and on the terms it would have had, if given on the 1st of July, 1868, in pursuance of the contract. By this adjustment Ruckman is prevented from taking advantage of his wrong in repudiating his bargain, and the just rights of the complainant, as far as practicable, are protected. That Ruckman was wrong in seeking to escape from his contract, is not open to doubt. It has been *adjudged,* and cannot now be considered. The Court of Appeals in so adjudging, directed that conveyance should be made according to the contract, so far as he was able to do so. In respect to lands actually owned, no modification of the terms of the contract was suggested, and none is required. It can be carried out in substance and in form. That can be done now which ought to have been done then. The time that has intervened is due to Ruckman's default, and ought not to be computed in his favor.

The conclusions thus expressed are abundantly sustained by the cases. The doctrine relied on for the defendant in asserting claim to the interest, is the doctrine that in equity, the result of a contract of sale is, that the thing sold thereupon becomes the property of the purchaser, and the purchase money the property of the vendor; that, as a corollary, the purchaser is entitled to the rents of the estate from the time fixed for completion, and the vendor is entitled to interest on the purchase money from the same time; that the estate and the purchase money are things mutually exclusive, and neither party can at the same time be entitled to both.

But this general and elementary doctrine is always applied with reference to, and for the promotion of the true agreement of the parties and the equities of the case. The vendor and vendee are trustees each for the other, and each will be held to execute his trust with fidelity to the other, and neither will be permitted so to manage or mismanage his trust as to advance his own interest at the expense of the *cestui que trust.* This principle, so evidently the dictate of reason, is illustrated in the cases upon the subject of interest and rents; which cases, if looked at with reference to the general doctrine as enunciated above, might well be thought conflicting, but with reference to the more specific and flexible principle governing the fulfillment of trusts, are found to be clear and consistent. They are extensively exhibited in *Chap. 4, Part 6,* of *Fry on Specific Performance.* I will refer only to *De Visme* v. *De Visme,* 1 *Macn. & G.* 336, where, in the opinion of Lord Chancellor Cottenham, the reasonable and equitable application of the doctrine is exemplified and explained.

A condition of sale there provided that the purchaser should pay in the remainder of the purchase money on or before the 26th of December, and on payment, to have possession, or the rents and profits from the preceding day; but if the purchaser should fail so to pay, then from whatever cause the delay in consummating the sale might occur, he should pay interest on the balance of the purchase money from that day till paid. Notwithstanding the explicit agreement for interest during any delay in consummating the sale, and notwithstanding the strength of the words, "from whatever cause the delay might occur," Lord Cottenham held that the interest should not be allowed. He did not find, he said, in any case, a contract that a purchaser is to pay interest from a day certain, although prevented from performing his part of the contract by the acts of the vendor; no purchaser would make such an agreement. Nothing, he adds, would be more unjust than to hold that a purchaser, having contracted to pay interest on his purchase money, (in almost all

cases exceeding the annual value of the property purchased,) is liable to pay such interest from the time contracted for, though the vendor has not performed his part by delivering the abstract so as to enable the purchaser to have the benefit of the contract.

I think the same considerations pertain to and must govern the question of the mortgage. The benefit accruing to the purchaser from having time for the payment of the bulk of the principal, and of the rate agreed on for interest, is apparent. It is a material ingredient of the bargain, as much so in reality, though not in degree, as the price, and cannot be withheld from the purchaser in this case by the willful mis_conduct of the vendor, for the sole benefit of the vendor himself.

Whether or not, the purchaser here made use of the purchase money after the defendant refused to accept it, is not, in my judgment, an important point in the suit. He tendered himself ready to fulfill his agreement, and has so continued since. It is not the case of a debt where, if interest is to be stopped, the principal must be held unemployed or paid into court. It is the case, as before said, of mutual trustees, one refusing and the other desiring to transfer in fulfillment of the trust. If one wrongfully retains and makes use of the land, the other is not thereby precluded from retaining and making use of the money.

The remaining question relates to compensation for lands which Ruckman is unable to convey. They are only the lands described in the agreement of May 12th, 1868, as those for which contracts were held. In the schedule appended to the master's report, they are shown to consist of eight tracts, containing in all seven hundred and sixty-two and thirty-five hundredths acres. No title was ever got by Ruckman to any of them. In respect to six of the tracts, the contracts were verbal, and in respect to tract numbered eight in the schedule, containing six hundred and seven and eighty-five hundredths acres, no contract whatever, sufficiently appears. For one tract of eighteen acres, belonging to John

J. Demarest, an agreement to convey, dated April 2d, 1868, was held by Ruckman, on which he had paid $50, and which sum he lost. The price of it was $2600. Excluding tract number eight, the acres comprised in the remaining seven tracts, for which complainant asks compensation, are one hundred and fifty-four and one-half. They were contracted for by Ruckman shortly prior to the date of his agreement with King, and in every instance were much less in price than $275 an acre, which King was to pay. The different tracts differ in price, but average, on the whole, a trifle less than $125 an acre. Those lands, like the others embraced in the agreement with King, advanced largely and rapidly in value; their market value being fixed by the master, at the date of his report, February 15th, 1873, at the sum of $92,103, showing an average rise, by the acre, from $125 to $577. For this difference, the complainant asks compensation. My opinion is, that none should be allowed. For all but the eighteen acres of Demarest, the contracts were exclusively verbal, and not such as a court of equity could enforce, or such as could be sued on at law. The contracts held by Ruckman, and so referred to in the agreement, must be construed to be such only as had a legal or equitable existence. Verbal contracts for the sale and conveyance of lands are legal nullities, and cannot properly be said to be held. For this reason, the six verbal contracts set out in the schedule are not within the terms or scope of the agreement. But supposing them to be so, the claim for compensation must fail for the further reason, applicable also to the written contract of Demarest, that the value of the lands had not advanced on the 1st of July, 1868, when the conveyance was agreed to be made, but was still at the average price of $125 an acre, being $150 an acre less than King was to pay. This appears from the proofs, and is so found by the master. No rule of compensation, decisive of this point, is indicated in the opinion of the Court of Appeals. The value of the lands embraced in the contract, and which Ruckman is not able to convey, is directed to be ascertained and damages

awarded, as the principles of equity may require. On the 1st of July, 1868, considerable portions of the lands to be conveyed, and which he actually owned, were worth largely more than the per acre price to be paid for the whole. These will all be conveyed. On that day, the conveyance of the lands now in question would not, I am satisfied, from what appears in the cause, have been insisted on by the complainant, nor would a failure to convey have been regarded as a breach of the agreement or a matter of complaint. Under the circumstances and facts of the case, the principles of equity will be adequately met, by adopting, as the rule for the measurement of damages, the rule of the law. In *Drake* v. *Baker*, 5 *Vroom* 358, it is laid down, that where a vendor of real estate unwarrantably refuses to execute his contract, the rule of damages, applicable in cases of sale of personal property, is in all respects apposite, and that the measure of damages is the difference between the contract price and the market value at the stipulated time of delivery. In the present case, no such difference exists, and no compensation or damages arise under the adoption of the strict legal rule, which is abundantly sufficient for what seem to me the equities of the case.

The above, briefly stated, are the reasons on which my conclusions in regard to the three controverted questions are grounded.