**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3884-21

COOLEST REFRIGERATION, LLC,

    Plaintiff-Respondent,

v.

ZINA'S SALADS, INC.,

    Defendant-Appellant.

_____

Submitted December 11, 2023 – Decided December 27, 2023

Before Judges Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1852-20.

Levine DeSantis LLC, attorneys for appellant (Peter L. Nichols, on the briefs).

Shawki & Associates, LLC, attorneys for respondent (Marco Mamdouh Shawki, on the brief).

PER CURIAM

    Defendant Zina's Salads, Inc. ("Zina's") appeals from a May 16, 2022

judgment, subsequent to a bench trial, where the trial court determined plaintiff

Coolest Refrigeration, LLC ("Coolest") breached its contract with Zina's but awarded no damages. We affirm.

I.

We glean these facts from the record. Coolest is a licensed heating, ventilation, air conditioning, and refrigeration ("HVACR") contractor owned by Samuel Sidhom. Zina's is a manufacturer and wholesaler of food products, namely salads and side dishes. In March 2019, Sidhom presented Zina's with an estimate totaling $29,400 for the installation of two custom walk-in refrigeration units at Zina's warehouse in East Hanover. This estimate explicitly outlined the requirement for the units to maintain a target temperature of thirty-five degrees Fahrenheit, and it expressly acknowledged the need for the refrigeration units to compensate for products entering at room temperature. Installation began sometime in the middle of April 2019. In June, an electrician connected the coolers to power.

The parties agree the second cooler was never able to achieve the target temperature. As part of his efforts to diagnose the problem, Sidhom sent a customer questionnaire to Zina's Chief Executive Officer ("CEO"), Valentin Chelnokov. The questionnaire asked, "Please describe what is going into the Walk In," to which Chelnokov responded, "hot/warm product 85-90°F, 15000

lbs a day in 5 lbs tubs[.]" The questionnaire also asked, "How soon should the product get down to target temperature?" to which Chelnokov responded, "[four] hours." Sidhom explained the unit would require additional equipment to reach target temperature within the specified time.

Subsequently, Sidhom provided Zina's with an estimate to add an additional ten-horsepower condenser to the existing system, which Sidhom offered at half-price. Believing that the original job had not been completed, Zina's opted not to install the additional ten-horsepower condenser, and instead agreed to the addition of a five-horsepower unit at no cost. Sidhom informed Zina's the five-horsepower unit would not be sufficient for the unit to reach target temperature within the specified time. Nevertheless, this additional installation was completed by the end of August.

Zina's made three payments according to the payment schedule on the estimate, but did not pay the final amount due of $6,400. Throughout September and October, Sidhom contacted Zina's for payment of the final amount. In response, Zina's Chief Financial Officer ("CFO"), Alex Chenakal, informed Sidhom that the cooler still failed to reach the target temperature, stating, "Your work is not complete. Please fix it." Sidhom explained the failure to reach

3

target temperature was due to Zina's decision not to include the additional capacity as Sidhom recommended.

Coolest subsequently initiated suit. Coolest's amended complaint alleged breach of contract and unjust enrichment and demanded payment of the balance due on the contract plus fees. Zina's answered the complaint and asserted counterclaims for breach of contract, common law fraud, and consumer fraud under N.J.S.A. 56:8-1 to -227. Zina's also successfully moved to transfer the matter to the Law Division.

A bench trial began in March 2022. After Sidhom testified on behalf of plaintiff, Zina's called three witnesses. An HVACR expert testified to why the system did not work. CEO Chelnokov testified as to his conversations with Coolest to diagnose and attempt to fix the problem. CFO Chenakal testified when the problems first arose, Zina's did not reach out to any other contractor because, in his experience, it was difficult to find HVACR professionals during the summer when they were in high demand. Further, he testified Zina's did not agree to the installation of the additional condenser because he and Chelnokov believed Sidhom should have completed the job as contracted without imposing additional charges.

A-3884-21

Chenakal also testified to Zina's business losses. He presented a loss of revenue analysis for the summer of 2019 that he prepared, estimating $711,000 in lost revenue from one client, Stop & Shop, and $176,000 in lost revenue from another client, NetCost. He supported the NetCost estimate with a letter of intent and supported the Stop & Shop estimate with evidence of a shipment rejected in May 2019 due to incorrect product temperature. He testified that in 2021, Zina's gross profits were approximately 27.9% of total revenue. Therefore, he calculated the lost revenue of $887,000 would have generated a gross profit of $249,000. He testified it was unnecessary to deduct any fixed expenses from the gross profits estimate because the company's administrative, production, and real estate expenses would have already been paid for by existing business. Therefore, according to Chenakal, the lost gross profits were equal to lost net profits.

On May 16, 2022, the court ordered an entry of judgment in Zina's favor on the complaint and count one of the counterclaim and dismissed counts two and three. In its written opinion, the court concluded Coolest failed to fulfill its contractual obligation to Zina's because the refrigeration system did not work as promised.

However, the court also found that while Zina's was relieved of its obligation to pay the outstanding balance of $6,400, it failed to prove its lost profits damages and would receive no award from Coolest. The court found Zina's claim for damages was not supported by adequate credible evidence. Specifically, the court found the lost profits analysis presented by Chenakal could not be used to determine damages. The court noted the purported loss of Stop & Shop business was not supported by any documentation, Chenakal's decision to exclude fixed costs from estimated lost profits was erroneous, and the report did not account for any other clients or the effects of the COVID-19 pandemic on sales. The court also found Zina's failed to mitigate its damages by "failing to make other arrangements promptly to complete the installation."

On June 3, 2022, Zina's moved for reconsideration and amendment of the court's order. On July 29, 2022, the court denied Zina's motion. The court stated Chenakal's testimony raised several credibility issues. The court found failing to deduct fixed costs from estimated gross profits was "fundamentally wrong . . . a fundamental principle of accounting and financial analysis that this alleged expert simply missed." The court said any attempt on its part to make an adjustment to the calculated damages would be too speculative and would involve "pulling numbers out of the air." The court found Zina's had not met its

6

burden to establish the quantity of the loss. The court found Chenakal, as an employee of Zina's, was not an independent witness and "lost all credibility in [the court's] mind when he didn't understand the fundamental principle that all, all profits bear some responsibility for being offset by direct, as well as indirect costs." The court reiterated there was no evidence Zina's tried, but was unsuccessful, in mitigating damages, and they had done "very little once they knew they had this fundamental problem . . . ."

On appeal, Zina's raises the following points:

POINT I

THE TRIAL COURT ERRED IN DENYING [ZINA'S] DAMAGES ON THE BASIS OF CHENAKAL'S EVIDENCE, WHEN IT WAS CLEAR THAT DAMAGES RESULTED FROM [COOLEST'S] BREACH OF CONTRACT.

POINT II

THE TRIAL COURT ERRED IN FINDING THAT CHENAKAL WAS UNQUALIFIED TO GIVE DAMAGES EVIDENCE.

POINT III

THE TRIAL COURT ERRED IN ITS FINDING THAT [ZINA'S] HAD FAILED TO MITIGATE ITS DAMAGES.

7

II.

Zina's first argues the court should not have denied relief for insufficiency of evidence because lost profits damages are, by nature, always speculative to some extent. Relying on Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co. 191 N.J. 1 (2007), Zina's argues uncertainty in the amount of damages cannot preclude recovery where it is certain that a breach resulted in loss. Zina's compares its method of estimating damages to that used in V.A.L. Floors, Inc. v. Westminster Communities, Inc., 355 N.J. Super. 416 (App. Div. 2002), which allowed evidence of prior business to form a reasonable basis to estimate lost profits. Zina's argues the estimates put forth by Chenakal for the lost revenues from NetCost and Stop & Shop, along with the profit margins from 2021, provided enough definiteness to permit the court to award damages. Zina's maintains that even if the failure to reduce the estimated gross profits by fixed costs was an error, that error is "hardly a basis for negating the entire amount of lost profit calculated."

In response, Coolest emphasizes the court's decision rested on the credibility of Chenakal's testimony and analysis, which must be respected "but for a clear case where there is no doubt the trial court erred." Coolest argues "mere opinion" and "mere speculation" are not sufficient to determine damages.

A-3884-21

A non-breaching party seeking compensatory damages in a contract action is "obligated to prove, by a preponderance of the evidence, that the losses it sought to recover were 'a reasonably certain consequence of the breach.'" Totaro, 191 N.J. at 15 (quoting Donovan v. Bachstadt, 91 N.J. 434, 445 (1982)). This burden also requires the non-breaching party "to demonstrate the appropriate method for quantifying that loss." Totaro, 191 N.J. at 15. A trial court may not rely on "wholly speculative" information to determine damages. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 375 (2011).

The cases on which Zina's relies do not support its position. Totaro involved a dispute where an accountant solicited business from a former employer in an established violation of a non-solicitation agreement. 191 N.J. at 17. The Supreme Court reduced the damages awarded by the trial court because the record supported the loss of only one year's profits, not the three years remaining on the agreement. Ibid. This outcome undermines Zina's request for this court to award damages despite a lack of competent, credible evidence and an appropriate method for quantifying them.

V.A.L. addressed whether estimates of lost profits were sufficient to survive summary judgment, a determination different from a factfinder's assessment of credibility. 355 N.J. Super. at 419. While the V.A.L. court

acknowledged a factfinder is afforded great latitude to speculate as to the precise amount of damages, estimated lost profits still needed to be "based on sound fact and not on mere opinion evidence without factual support . . . ." Id. at 425 (quoting Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 144 (1950)).  Here, the trial court rejected the evidence before it not for imprecision, but for lack of credibility and for Zina's failure to provide the court with a reliable method to calculate the award.

While Zina's is correct that an inability to prove damages with absolute precision does not automatically preclude recovery, it still had an evidentiary burden to meet.  Evidence of the damages did not need to be precise, but it did need to be competent and credible.  Here, the trial court found the testimony and financial analysis put forward by Chenakal to be flawed, not based on sufficient underlying data, and not credible.  Given the highly deferential standard afforded to a trial court's assessment of witness credibility and evidentiary matters, there is no reason to disturb the trial court's conclusion.  L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

A-3884-21

Zina's next argues the court, in both its original judgment and its denial of the motion for reconsideration, "strongly suggested that Chenakal was not qualified to testify as to [Zina's] damages because he was an officer of the company and not an independent expert witness." Zina's points to Totaro and V.A.L. as examples in which parties were permitted to testify as to their own lost profits.

Coolest responds the trial court did not, in fact, find Chenakal unqualified to give damages evidence. Coolest notes Chenakal's testimony was admitted over Coolest's objection, raised in limine, which argued that expert testimony was necessary. Coolest argues the court's assessment of the testimony was "not due to Mr. Chenakal's position, experience or knowledge, but was solely due to his failure to provide adequate basis for his conclusions."

Unless offered as experts, witnesses may testify only if they have "personal knowledge of the matter." N.J.R.E. 602. A non-expert witness may also offer opinion or inference testimony if the testimony "(a) is rationally based on the witness' perception; and (b) will assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701. "The fact that a person with personal knowledge of facts relevant to a dispute may also qualify as an

11

expert in the particular field associated with those facts does not convert his or her testimony based on personal knowledge of specific facts into expert testimony . . . ." E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 26 (App. Div. 2018).

Even though the trial court did refer to Chenakal as "this alleged expert," Zina's never tendered Chenakal as an expert witness. When denying Coolest's motion in limine, the court allowed Chenakal to testify about Zina's business because he had personal knowledge through his work as CFO. The testimony was admitted "subject to [the court's] ruling as to relevance and sufficient basis to the issue." Apart from a sustained objection to hearsay testimony, Coolest did not raise, and the court did not rule on, any challenge to Chenakal's testimony as not being adequately based on his own personal knowledge. Chenakal was therefore permitted to testify as a fact witness and give lay opinion testimony on the material fact of damages, subject to the requirements of N.J.R.E. 701.

The trial court's assessment of Chenakal's testimony and financial analysis was clearly an evaluation not of Chenakal's qualifications, but of his credibility, which the court found lacking due to errors in the report and Chenakal's "vested interest in the outcome." This does not mean the court deemed Chenakal

unqualified to give either factual or lay opinion testimony. Indeed, both types of evidence were introduced through his testimony.

IV.

Finally, Zina's argues due to the seasonal demands of its business and the scarcity of refrigeration professionals in the summer, mitigation was not realistic. Zina's argues, Coolest, as the breaching party, bore the burden of demonstrating it was possible for Zina to mitigate its damages. Coolest emphasizes it offered to install additional equipment, which Coolest maintains could have mitigated Zina's damages, but Zina's refused the offer.

An injured party's duty to take reasonable steps to mitigate damages is "well settled." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 344 (App. Div. 2021) (quoting McDonald v. Mianecki, 79 N.J. 275, 299 (1979)).

> Once a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected . . . to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise . . . . The amount of loss that he could reasonably have avoided by . . . making substitute arrangements . . . is simply subtracted from the amount that would otherwise have been recoverable as damages.
>
> [Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 83 (App. Div. 1997) (quoting Restatement (Second) of Conts., § 350, cmt. b (Am. L. Inst. 1981)).]

13

While an injured party may "urge the [breaching] party to perform[,]" such efforts do not constitute mitigation, but are taken into account to determine the reasonableness of the time actual mitigation begins after a breach is discovered. Ibid. Whether a non-breaching party made "reasonable efforts to mitigate its damages [is] a question for the trier of fact." State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 616 (App. Div. 2006) (citing Ingraham, 297 N.J. Super. at 84). The breaching party has "the burden of proof . . . as to actual or potential mitigation and the amount thereof." Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 455 (App. Div. 1976) (citing Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 28 (Ch. Div. 1952)).

Zina's is correct that as the breaching party, Coolest bore the burden to prove the possibility of mitigation, Zina's failure to mitigate, and the value of any corresponding reduction of damages. However, the court found factual support for its conclusion through Zina's own evidence. Zina's employees testified they took little, if any, action to contact other refrigeration professionals during the peak summer months, and they could not identify when another professional eventually was contacted. To the extent the trial court might have placed the burden of proving the facts of mitigation on Zina's, that was an error. However, because factual support for the court's conclusion was introduced by

Zina's anyway, and because there are no compensatory damages to be reduced

by a purported failure to mitigate, any such error does not rise to an error clearly

capable of producing an unjust result.  R. 2:10-2.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3884-21